[No. 28823. Department One. January 9, 1943.]

E. A. EASTON, *Appellant*, v. STEPHEN E. CHAFFEE, *Respondent*.[1]

'Reported in 132 P. (2d) 1006.

*J. P. Tonkoff,* for appellant.

*Clark & Grady,* for respondent.

MILLARD, J.—This action was instituted April 8, 1939, to recover against defendant for damages claimed to have been sustained by plaintiff as a result of certain alleged fraudulent conduct of defendant. Trial of the cause to a jury culminated in a general verdict for the defendant, and an affirmative answer to a special interrogatory that a part of plaintiff's claim was barred by the statute of limitations. From judgment entered on the verdict, plaintiff appealed.

This cause was formerly tried and submitted to a jury upon the theory that fraud was the gist of the action. After reconsideration of the matter, upon motion for judgment notwithstanding the verdict in favor of the plaintiff, the trial court concluded that the action was for breach of contract, or breach of duty of attorney to client, and that the statute of limitations had run against it, and granted the motion. At the same time, the court entered an order granting defendant's motion for a new trial, to be effective in event of reversal of the judgment notwithstanding the verdict. On appeal, we held that the action was based on fraud, reversed the order granting the motion for judgment notwithstanding the verdict, and affirmed the order granting a new trial. *Easton v. Chaffee,* 8 Wn. (2d) 509, 113 P. (2d) 31.

Summarized, appellant made the following claims: Respondent, who is a lawyer in whom appellant had full and complete confidence, and whom appellant had consulted on several occasions prior to February 5, 1934, approached appellant, the date mentioned, with a paper which he represented authorized respondent

to appear before the county commissioners of Yakima county to secure a reduction of taxes on appellant's home ranch, and thereby secured appellant's signature to the paper which, in fact, was a verification to a complaint in an action to reduce the taxes on appellant's property. Respondent's representation to appellant, that it was necessary that the latter pay (which he did) certain taxes and assessments against the home ranch, was false, as the taxes had been canceled, by reason of prior sale of the land by the treasurer of Yakima county for delinquent irrigation assessments. Respondent, as attorney for appellant, arranged with the creditors (First National Bank of Sunnyside and C. Speck, Inc.) of appellant to accept a less sum than the actual indebtedness owed to those creditors out of the proceeds of a loan of money, which respondent induced appellant to borrow, and, after disbursement of the loan, respondent induced appellant to give his note to C. Speck, Inc., in the sum of six hundred dollars and to secure the payment of same by a chattel mortgage. Respondent induced and coerced appellant into signing a note in the amount of seventy dollars, payable to C. Speck, Inc. Both notes were later paid by appellant, who, in order to make the payment, was compelled to sell most of his livestock, from which appellant's income was derived; and that, having been required to thus dispose of his livestock, appellant was unable to meet the payments and interest on the Federal farm mortgage corporation loan; as a result, appellant lost his real property and a judgment was entered against him to his damage in the amount of approximately thirty-six hundred dollars.

It is not necessary to recite in detail the evidence, which is sharply conflicting. The evidence (which the jury accepted as true and which is conclusive of the questions of fact) adduced on behalf of respondent, re-

futes the charges of fraudulent representations and misconduct on the part of respondent.

Counsel for appellant first assigns as error the trial court's refusal to permit testimony on, and withdrawal from the jury of, an item of damages in the amount of three thousand dollars, claimed to have resulted to appellant from sale of his livestock, in order to pay the two notes to C. Speck, Inc., whereby he lost the greater part of his income, and, as a result, he lost his farm through foreclosure of mortgage thereon.

█ Conceding, *arguendo*, that respondent fraudulently induced appellant to give the notes in question, and further conceding, for the sake of argument, that the notes were void and not collectible—the evidence on behalf of respondent disproves the charges made—we find no causal connection between the alleged fraud and the ultimate loss of the real estate by the foreclosure of the mortgage thereon. Appellant did not have to pay the notes, as same were void. Respondent had nothing to do with the selling of appellant's personal property to pay the notes. To be actionable, the loss of appellant's real estate would have to be, which it is not, the natural and necessary result of some wrongful act on the part of respondent.

██ Counsel for appellant argues that the question of damages is *res adjudicata* by reason of *Easton v. Chaffee,* 8 Wn. (2d) 509, 113 P. (2d) 31. Not so. That portion of our opinion in the first appeal, respecting appellant's allegation of the loss of his real estate because appellant was compelled to sell his livestock in order to pay the notes in question, is merely a recital of the claim of appellant as to the manner in which fraud was practiced upon him, and we referred to it as one of the factors on which we based our conclusion that the action was bottomed upon fraud instead of

breach of duty of attorney to client. At any rate, the withdrawal of this item of damage from the jury was not prejudicial, as the verdict of the jury is determinative that the fraud upon which the claim is based did not exist.

Counsel for appellant next insists that the court erred in giving that part, which we have italicized, of instruction No. 11, reading as follows:

"If you find from the evidence that the plaintiff either knew or by the exercise of his reasonable diligence should have known of matters and things which he claims and alleges were fraudulent acts and misrepresentations of the defendant at any time prior to the eighth day of April, 1936, then he cannot recover any damages from the defendant with reference thereto; and therefore *if you find from the evidence that the plaintiff had been informed that the taxes and assessments which were paid out of the loan and had been cancelled by the deed of the land to the irrigation district at any time before April 8, 1936, he cannot recover this item or any part thereof from the defendant.*" (Italics ours.)

Appellant excepted ·

". . . for the reason that the fraud perpetrated upon the plaintiff was not the sale of the property to the irrigation district but the misrepresentations in procuring plaintiff to sign a verification of a complaint upon the defendant's representations that it was an authorization to meet with the County officials."

Appellant also complains of submission to the jury of a special interrogatory, reading as follows:

"Did the plaintiff find out that the deed to the irrigation district on his home place canceled taxes and drainage assessments before April 8, 1936?"

Rule X of the Rules of Practice, 193 Wash. 47-a, provides that an exception shall be sufficiently specific to apprise the judge of the points of law or questions of fact in dispute. The exception to the in-

struction does not comply with the rule; hence does not present any question for review. The instruction has to do with the statute of limitations. This action is based on fraud, and the statute of limitations would commence to run from the time of the discovery of fraud.

Appellant alleged, as one of his claims of fraud, that respondent misrepresented to appellant that there were unpaid taxes and assessments against his land. If appellant knew, or should have known, any time prior to April 8, 1936, that a deed from the county treasurer to the irrigation district had canceled the taxes and assessments—in which case there would not have been any unpaid taxes and assessments against appellant's land—the action as to damages and such misrepresentations would be barred.

One of the alleged fraudulent acts of respondent was his representation to appellant that a paper he induced appellant to sign authorized respondent to meet with the county commissioners to obtain a reduction of the taxes assessed against appellant's land, when, in fact, it was a verification to a complaint which respondent, as attorney for appellant, filed in the superior court for Yakima county for a reduction of taxes which stood on the tax roll against appellant's land. Appellant's exception was merely appellant's statement as to what he thought constituted the fraud, and was not, of course, of any assistance to the court in determining whether the instruction was correct, which is the purpose of the rule. The exception did not point out to the judge any point of law or question of fact in dispute.

The instruction is a correct statement of the law, applicable to the issues before the jury. No exception was taken by appellant to the first part of instruction No. 11 which has reference to all of the fraudulent acts of which appellant complains. The latter

190

part of the instruction, to which appellant excepted, specifically refers and is directed to that part of the fraud in which appellant claimed respondent represented to him that certain taxes and assessments were against his property, when, in fact, they had been canceled by the deed to the irrigation district. If appellant knew (there is evidence that he did), prior to April 8, 1936, that the irrigation district had secured a deed to the property, which deed canceled the taxes and assessments, appellant's claim of fraud in that respect would be barred.

The court very properly, in order to definitely determine that particular element of fraud, submitted to the jury the special interrogatory, to which the jury gave an affirmative answer. Respondent was entitled to a specific instruction to any one of the elements of alleged fraud, particularly so where he submitted with that requested instruction a special interrogatory relating to that particular element of fraud.

Obviously, appellant could not have been damaged merely because he was induced to believe he was signing an authority for his representative to appear before the county commissioners to obtain a reduction of taxes, when, in fact, he was signing a verification to a complaint to effect the same result in court. The damage, if any, sustained by appellant, consisted in payment of taxes and assessments which had been canceled and which he did not have to pay. That part of the instruction to which appellant excepted would not have anything to do with the question regarding the time appellant discovered the character of the paper he signed, but related to another claimed element of fraud.

The court was referring in this instruction specifically to knowledge of the effect of the deed on the taxes and assessments, and could not have caused the jury

to believe that, if they found for the respondent as to this element of fraud, they could not return a verdict against respondent on the other elements of fraud; as to which the jury was properly charged by the court in other instructions.

■■ Counsel for appellant next complains of the refusal of the court to give appellant's proposed instruction No. 1, defining fraud. The instruction given by the court defining fraud differs not from appellant's proposed instruction No. 1, except for the omission from the instruction given of the final paragraph of the proposed instruction, which reads as follows:

"Fraud is, however, particularly a wrong of secrecy and circumvention, and may be traced not in the open proclamation of the wrongdoer's purpose, but by indications of covered tracks and studious concealments. Nor is direct and positive proof necessary to establish fraud, but it may be established like any other wrong, by circumstantial evidence or by an inference from facts proven."

Counsel for appellant argues that, by the court's failure to give the quoted portion of the proposed instruction, appellant was deprived of the right to submit the cause to the jury on the established rule that fraud may be proved by circumstantial evidence; that is, the jury was not afforded the opportunity to infer fraud from facts proved.

All of the evidence submitted by appellant, as to the representations made, was direct testimony of appellant who purportedly was the only one who knew anything about the making of the alleged misrepresentations and he testified that they were made directly to him. There was no testimony by anyone as to other facts or circumstances from which the fraud claimed would be inferred, nor which required an instruction on circumstantial evidence. We do not find anywhere in the record any evidence, nor have we been directed

by counsel to any facts, from which an inference of fraud may be drawn. The part of the proposed instruction, which counsel for appellant insists should have been given, is a correct statement of an abstract legal principle, but a court is not required to instruct a jury on abstract legal principles. The instruction given states the law, as applied to the factual situation; hence it is sufficient. *Lindsey v. Elkins*, 154 Wash. 588, 283 Pac. 447; *Wylie v. Stewart*, 197 Wash. 215, 84 P. (2d) 1004.

Another error assigned is refusal of the court to give a proposed instruction, by which appellant sought to cast the burden of proof upon respondent to establish that no fraud was committed, on the theory that respondent acted as attorney for appellant and that there existed a trust or fiduciary relationship between appellant and respondent.

The burden was upon appellant to prove the claimed fraud as in other cases, and the instruction given by the court was correct. The authorities cited by appellant have to do with a situation where an attorney and his client have some transaction with each other, or enter into some contract from which the attorney profits. If, in carrying out such contract or transaction, a question arises between the parties and litigation follows therefrom, then, by reason of the relationship of attorney and client, fraud or overreaching may be inferred and the *onus* is upon the attorney to show that he dealt fairly with his client, as is stated in certain authorities cited by appellant. In the case at bar, there was no such transaction between appellant and respondent. It is claimed that respondent made certain false representations to the appellant which induced him to sign a paper, which was represented to him to be different than it was in fact, to pay taxes and assess-

ments which he did not owe, and to sign two notes payable to C. Speck, Inc.

Appellant is not endeavoring to set aside any contract or transaction he had with respondent, neither is respondent attempting to enforce any contract or transaction with appellant, therefore the rule as to burden of proof urged by appellant is not applicable.

"Assuming that the basis of this action is fraud, and that S. M. Anderson, Sr., and S. M. Anderson, Jr., were acting in a fiduciary relation to the corporation, respondent must allege, and the burden is upon it to prove, the fraud, and the burden does not shift to appellants because of the claimed fiduciary relation. *Reeves v. Davis & Co.*, 164 Wash. 287, 2 P. (2d) 732." *Bay City Lbr. Co. v. Anderson,* 8 Wn. (2d) 191, 111 P. (2d) 771.

It is unnecessary to discuss assignment of error No. 5 on refusal of the court to give another of appellant's proposed instructions, in view of the fact that the exception taken to the refusal to give the proposed instruction is insufficient under Rule X of the Rules of Practice, 193 Wash. 47-a.

The judgment is affirmed.

Robinson, C. J., Steinert, Jeffers, and Mallery, JJ., concur.